**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIEL L. SLAUGHTER<br>Plaintiff, | CIVIL ACTION NO. 1:24-cv-01170 |
| v. | (Judge Wilson)<br>(Magistrate Judge Latella) |
| DAUPHIN COUNTY ADULT<br>PROBATION, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

### I.    Introduction

Daniel L. Slaughter, the *pro se* Plaintiff in this matter, suffers from a history

of numerous mental health issues and has undergone several inpatient psychiatric

hospitalizations. On May 30, 2023, Mr. Slaughter was sentenced to three years'

probation by the Court of Common Pleas for Dauphin County. He was later

assigned a mental health probation officer, Defendant Kamela Banning, to

supervise him. Plaintiff maintains that while he was under supervision, several of

his constitutional and statutory rights were violated because his probation officer,

her supervisor, and the Adult Probation Office failed to properly address his serious

mental health needs and acted in a discriminatory manner toward him. He also

alleged that Defendant Banning made a false statement to the Dauphin County

Court resulting in an arrest warrant and sanction of 6 months' home confinement.

1

Plaintiff initiated this action by filing a complaint on July 16, 2024, against the Dauphin County Adult Probation Office and Officer Kamela Banning raising claims under Title II of the Americans with Disabilities Act (ADA), gross negligence, and defamation. (Doc. 1). Liberally construed, the Complaint also raised a Fourth Amendment false arrest claim. (*See* Doc. 14, pp. 6–10). Adopting a Report and Recommendation issued by Chief United States Magistrate Judge Daryl Bloom, on December 19, 2024, this Court dismissed the ADA, negligence, and defamation claims and allowed the Fourth Amendment claim to proceed.[1] (Doc. 21).

On June 17, 2025, the Plaintiff filed an Amended Complaint, (Doc. 50), after having been granted leave to do so. (Doc. 47). While the Amended Complaint only makes vague reference to the Fourth Amendment false arrest claim, which was previously permitted to proceed, the Plaintiff appears to attempt to again raise that claim by reference to his previous Complaint. The Amended Complaint also attempts to resurrect the previously dismissed ADA claim and alleges violations of the Eighth Amendment of the Constitution, the Rehabilitation Act of 1973, and various state law claims. Many of Plaintiff's claims are barred by the Eleventh

---

[1] The Report and Recommendation, which was adopted *in toto*, recommended dismissal of the ADA claim with prejudice, dismissal of the defamation claim based on Eleventh Amendment immunity, and dismissal of the negligence claim for failure to state a claim. (*See* Docs. 14 and 21).

Amendment, and for those claims that are not barred, the Complaint fails to allege a cognizable cause of action. For the reasons that follow, it will be recommended that the Defendants' Motion to Dismiss be granted in its entirety. Because Plaintiff's Fourth Amendment claim was previously permitted to proceed, and not raised again in the Amended Complaint, it will be recommended that Plaintiff be given leave to file a second amended complaint as to that claim only.

## II.    Procedural History

Plaintiff initiated this action by filing a *pro se* Complaint pursuant to 42 U.S.C. § 1983 on July 16, 2024, naming the Dauphin County Adult Probation Office and Probation Officer Kamala Banning as defendants. (Doc. 1). He also filed a Motion for Leave to Proceed *in forma pauperis*. (Doc. 2). The matter was referred to Chief Magistrate Judge Bloom on October 28, 2024. On October 29, 2024, Judge Bloom issued an Order granting Plaintiff's Motion to Proceed *in forma pauperis*, (Doc. 13), and a Report and Recommendation wherein he recommended dismissal of all claims except for a Fourth Amendment claim against Defendant Banning. (Doc. 14). The Report and Recommendation was adopted on December 19, 2024, by Judge Jennifer P. Wilson and the matter was referred back to Magistrate Judge Bloom for further pretrial management. (Doc. 21). Defendant Banning filed an Answer on February 20, 2025. (Doc. 27).

3

Plaintiff filed a request for leave to file an Amended Complaint on May 1, 2025, (Doc. 41), which Judge Bloom granted on May 16, 2025. (Doc. 47). Plaintiff filed an Amended Complaint on June 17, 2025, again naming Dauphin County Adult Probation and Mental Health Probation Officer Kamela Banning as defendants, but adding Defendant Banning's supervisor, Juli Nicholson. (Doc. 50). Defendants filed a Motion to Dismiss for Failure to State a Claim on July 1, 2025 (Doc. 53) along with a Brief in Support on July 15, 2025. (Doc. 55). On August 1, 2025, Plaintiff filed a two-page brief in opposition to the Motion to Dismiss, (Doc. 59), and Defendants filed their Reply Brief on August 14, 2025. (Doc. 62).

Plaintiff has sought the appointment of counsel several times throughout the course of this litigation. (Docs. 10, 29, 43, and 57). Because Plaintiff failed to meet the standard for the appointment of counsel, his first three Motions were denied. (Docs. 14, 31, and 47, respectively). Plaintiff filed a fourth Motion for the Appointment of Counsel on August 1, 2025, (Doc. 57), along with a Request for the Assignment of a "Mental Health Legal Advisor." (Doc. 60). Because of the allegations made in Plaintiff's request, a duty inquiry pursuant to Federal Rule of Civil Procedure 17 arose and Plaintiff was directed to submit, for *in camera* review, "(1) any documentation from a public agency or court of record that he has been adjudicated incompetent, or (2) documentation from a medical provider that the type of mental illness for which he is being treated renders him legally

incompetent." (Docs. 75 and 76). Plaintiff submitted documentation regarding his mental health treatment on two separate occasions. After reviewing that documentation, it was determined that Plaintiff's mental health issues do not rise to a level reaching legal incompetency. Accordingly, Plaintiff's fourth request for legal counsel (Doc. 57) and a mental health advisor (Doc. 60) were denied by Order issued of even date with this Report and Recommendation.

### III.    Factual Background

Plaintiff's Amended Complaint, as the expression goes, is far from a model of clarity and requires liberal construction. Plaintiff asserts that members of Dauphin County Adult Probation failed to adequately supervise him or accommodate his mental health issues. As a result of a guilty plea, Plaintiff was sentenced to three years of probation on May 30, 2023, in the Dauphin County Court of Common Pleas. (Doc. 50, p. 2). He alleges that at the sentencing hearing, he expressed interest in receiving treatment at the Community Services Group (CSG) facility, which the sentencing Judge, William T. Tully, purportedly agreed to. (*Id.*). Plaintiff states that despite Judge Tully being "extremely supportive in that sentencing" and giving Plaintiff the impression that he was authorizing a Work Release transfer, Plaintiff continued to be held in Dauphin County Prison.[2] (*Id.* at

---

[2] While Plaintiff alleges that he was not released pursuant to the wishes of the sentencing judge, he makes no allegations that the Defendants had any role in that

2–3). Upon his release, Plaintiff states that he was homeless and unemployed, and suffered a "mental and emotion breakdown" which ultimately led to his admission to the Pennsylvania Psychiatric Institution. (*Id.* at 3). From there, he was released directly to CSG – the program he had expressed an interest in attending at his sentencing hearing. (*Id.*).

However, his experience at CSG did not go as he had hoped: Plaintiff claims he was "subjected to a grotesque level of negligence and discrimination," and was ultimately discharged "for allegedly showing signs of visible intoxication." (*Id.* at 3–4). It was while he was at CSG that Dauphin County Mental Health Probation Officer Kamela Banning was assigned to supervise him. (*See* Doc. 50, p. 3). Plaintiff claims that Defendant Banning did not have any conversations regarding his mental health, and she "was always negative, never supportive and extremely sarcastic." (*Id.*). He states that after his discharge from CSG, he was homeless and in-and-out of inpatient psychiatric hospitals for several months. (*Id.* at 4). Despite informing her of his whereabouts and condition, Plaintiff claims that "Officer Banning was extremely apathetic, failing to express or even scant care regarding the Plaintiffs [sic] health and well being." (*Id.*).

---

decision. Indeed, it was not until after he was released that Defendant Banning became his probation officer.

Around February 13, 2024, according to Slaughter, approximately seven months after Defendant Banning had been assigned to supervise him, he contacted her supervisor, Juli Nicholson, "making her aware of Officer Banning[']s conduct, and requesting that the Plaintiff be assigned to a new Mental Health Probation Officer." (*Id.* at 5). He claims that Supervisor Nicholson refused to reassign Plaintiff, instead "[justifying] Officer Banning[']s conduct" and stating that Officer Banning "had the Plaintiffs [sic] best interest at heart." (*Id.*).

This civil action followed, raising numerous claims including negligence, deliberate indifference in violation of the Eighth Amendment, intentional infliction of emotional distress, and violations of Titles II and III of the Americans with Disabilities Act. Plaintiff brings claims against Dauphin County Adult Probation, Officer Kamela Banning in her official and individual capacity, and Dauphin County Adult Probation Officer Supervisor Juli Nicholson in her official capacity. (Doc. 50, p. 2). For relief, Plaintiff requests an injunction directing Dauphin County Adult Probation to fully adhere to the ADA; a statement that Defendants violated Plaintiff's rights; $500,000 against all Defendants in compensatory damages; and $500,000 against all Defendants as punitive damages. (*Id.* at 9).

7

## IV.   Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion is the proper mechanism to raise Eleventh Amendment immunity as a bar to the exercise of federal jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100, 104 S. Ct. 900, 79 L.Ed.2d 67 (1984)). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A district court must first determine, therefore, whether a Rule 12(b)(1) motion presents a "facial" attack or a "factual" attack on the claim at issue, because that distinction determines how the pleading must be reviewed. *In re Schering Plough Corp. Intron,* 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen,* 549 F.2d at 891).

Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891.

Here, the Defendants make a facial attack, as they "assert they are immune from Plaintiff's claims as pled." *Hicks v. NJ Dep't of Corr.*, No. CV 16-0927, 2017 WL 168917, at *2 (D.N.J. Jan. 17, 2017); *Garcia v. Knapp*, No. 219CV17946, 2020 WL 2786930, at *4 (D.N.J. May 29, 2020) ("Defendants, by asserting Eleventh Amendment immunity, raise a facial 12(b)(1) challenge. In so doing, Defendants do not necessarily dispute the facts asserted by [Plaintiff], but rather rely on immunity that the claims asserted bar this Court from jurisdiction.").

9

Therefore, only the allegations in the Complaint and any documents referenced therein will be considered, and any inferences will be construed in the light most favorable to the nonmoving party.

### B.  <u>Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)</u>

Rule 8 of the Federal Rules of Civil Procedure states that a claim must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This requires the Plaintiff to put forth evidence that, "when taken as true, suggest[s] the required elements of a particular legal theory." *McNeilly v. City of Pittsburgh*, 40 F. Supp.3d 643, 650 (W.D. Pa. 2014). The Plaintiff must state "sufficient factual allegations which 'nudge' its claims 'across the line from conceivable to plausible.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009)). The purpose is to ensure "fair notice of the factual basis of a claim while raising a 'reasonable expectation that discovery will reveal evidence of the necessary element.'" *Id.* at 651.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This means that a complaint may be dismissed if it does not present sufficient facts to support a plausible claim: "Under Rule

12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

The court must accept both the plaintiff's allegations and any reasonable inferences that can be drawn as true and construe them in the light most favorable to the non-moving party. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). However, it need not accept "'unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Reciting the elements that make up a cause of action and supporting them with "mere conclusory statements" is insufficient to give those statements the presumption of truth. *McNeilly*, 40 F. Supp.3d at 650 (citing *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937).

When faced with a motion to dismiss pursuant to 12(b)(6), a court should conduct a two-part analysis: 1) separate the factual and legal elements of a claim; and 2) "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* (internal citation removed). The court may consider facts alleged on the face of the complaint, as well as

11

"documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellab, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). This analysis requires the court to look at the claims on a case-by-case basis and rely both "on its judicial experience and common sense." *McNeilly*, 40 F. Supp.3d at 650. The court will not be reaching legal conclusions, but instead is merely determining "whether the plaintiff should be permitted to offer evidence in support of the allegations." *Id.* (citing *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000)).

Furthermore, a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support a viable claim for relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). "The Court will take into account that this plaintiff is proceeding *pro se,* and will liberally construe the pleadings and will apply the applicable law, 'irrespective of whether the pro se litigant has mentioned it by name.'" *Luna v. Weiner*, No. CIV A 05-2298, 2006 WL 2570837, at *3 (D.N.J. Sept. 5, 2006) (quoting *Higgins v. Beyer,* 293 F.3d 683, 688 (3d Cir. 2002)).

## C. 42 U.S.C. § 1983

Plaintiff has alleged violations of his constitutional rights and filed suit under 42 U.S.C. § 1983 which states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, will be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137 144 n.3 (1979)). To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). "Action under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

## V.    Discussion

### A. <u>The Section 1983 Claims</u>

Plaintiff alleges that Defendants violated his Eighth Amendment rights by being deliberately indifferent to his medical needs. (Doc. 50, p. 8). While section 1983 is not referenced in the Complaint, affording a liberal construction to this *pro se* pleading, Plaintiff's constitutional claims will be considered as being brought under section 1983. Because Plaintiff is bringing claims against Dauphin County Probation and its officers in their official capacity, those Defendants are entitled to Eleventh Amendment immunity. (Doc. 55, p. 21).

### 1.  <u>Eleventh Amendment Immunity</u>

A claim against a defendant who is a state official, being sued in their official capacity for monetary damages, is barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 27, 112 S. Ct. 358, 362, 116 L. Ed. 2d 301 (1991). The Eleventh Amendment to the United States Constitution precludes private individuals from bringing suit against a state in federal court. U.S. Const. amend. XI  ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.

Ct. 900, 79 L. Ed. 2d 67 (1984). Such immunity may also extend to suits brought against "arms of a state." *Patterson v. Pennsylvania Liquor Control Bd.*, 915 F.3d 945, 950 (3d Cir. 2019) (quoting *Karns v. Shanahan*, 879 F.3d 504, 512–13 (3d Cir. 2018)); *Mt. Healthy City Sch. Dist. Bd. Of Edu. v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977) (same). A party is considered an "arm of the state" for immunity purposes "when 'the state is the real, substantial party in interest.'" *Patterson*, 915 F.3d at 950 (quoting *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464, 65 S. Ct. 347, 89 L.Ed. 389 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623, 122 S. Ct. 1640, 152 L.Ed.2d 806 (2002)).

Eleventh Amendment immunity "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction," and may be properly considered by way of a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). "This jurisdictional bar applies regardless of the nature of the relief sought," including suits brought by plaintiffs in equity. *Pennhurst*, 465 U.S. at 100 (citing *Missouri v. Fiske*, 290 U.S. 18, 27, 54 S. Ct. 18, 78 L.Ed. 145 (1933)).

However, Eleventh Amendment immunity is not absolute. There are three narrow exceptions to Eleventh Amendment immunity: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for

prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001); *see also Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908). The third exception is referred to as the *Ex parte Young* doctrine and applies to suits for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law. *See MCI Telecommunications Corp.*, 271 F.3d at 507. "[A] suit against a state officer seeking prospective relief designed to end a continuing violation of federal law is not barred by the Eleventh Amendment under the theory that the action is not against the state because the alleged violation of federal law strips the officer of his official authority." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citing *Ex parte Young*, 209 U.S. at 159–60; *Pennhurst*, 465 U.S. at 103).

2.  <u>Defendants Dauphin County Adult Probation, Supervisor Juli Nicholson in her Official Capacity, and PO Banning in her Official Capacity Are Entitled to Immunity</u>

The claims against Dauphin County Adult Probation, Probation Supervisor Juli Nicholson in her official capacity, and Officer Banning in her official capacity should be dismissed without prejudice, as they are barred by the Eleventh Amendment.

16

"[T]he state courts that comprise Pennsylvania's unified judicial system, including the courts of common pleas, are entitled to Eleventh Amendment immunity." *Harr v. Buczak*, No. CV 21-1555, 2024 WL 4064139, at \*4 (W.D. Pa. Sept. 5, 2024) (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240–41 (3d Cir. 2005)). The Commonwealth of Pennsylvania vests its judicial power in one "unified judicial system," Pa. Const. art. V, § 1, such that "all courts and agencies of the UJS are part of the Commonwealth government rather than local entities." *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008). Because probation and parole departments fall under the court system, they too are entitled to Eleventh Amendment immunity. *Id.*; *Howard v. Chester Cnty. Off. of Juv. Prob. & Parole*, 396 F. Supp. 3d 490, 498 (E.D. Pa. 2019) ("The Eleventh Amendment provides immunity to subunits of the State, which, according to the Third Circuit, include the County Probation and Parole Departments." (cleaned up)). Therefore, Eleventh Amendment immunity applies to Plaintiff's claims against Dauphin County Adult Probation unless one of the three exceptions—congressional abrogation, state waiver, or suits against state officials for injunctive and declaratory relief for an ongoing violation of federal law—apply. *See MCI Telecommunications Corp.*, 271 F.3d at 503.

The first two exceptions are inapplicable: "The Commonwealth of Pennsylvania has not waived its immunity in § 1983 civil rights cases (42

17

Pa.C.S.A. § 8521) and Congress did not abrogate state immunity in general in enacting civil rights legislation, including § 1983." *O'Hara v. Indiana Univ. of Pennsylvania*, 171 F. Supp. 2d 490, 495 (W.D. Pa. 2001) (citing *Quern v. Jordan*, 440 U.S. 332, 342, 99 S. Ct. 1139, 59 L.Ed.2d 358 (1979); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989)). Furthermore, as to this claim, Plaintiff is moving for monetary compensatory and punitive damages rather than injunctive relief. Thus, none of the exceptions to Eleventh Amendment immunity apply and the claims against Dauphin County Adult Probation should be dismissed without prejudice.[3]

---

[3] A dismissal for lack of standing—or any other deficit in subject-matter jurisdiction—must be one without prejudice, as a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits. *See* Fed. R. Civ. P. 41(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505, 121 S. Ct. 1021, 149 L.Ed.2d 32 (2001); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94, 118 S. Ct. 1003, 140 L.Ed.2d 210 (1998); *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 222 (4th Cir. 2001) (en banc); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims."); *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) ("A suit dismissed for lack of jurisdiction cannot also be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render. . . . 'No jurisdiction' and 'with prejudice' are mutually exclusive." (internal citation omitted)); *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) ("If a court then determines that it lacks subject matter jurisdiction, it cannot decide the case on the merits. It has no authority to do so."); *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) ("[A] dismissal with prejudice on a threshold ground [such as lack of subject-

With respect to claims brought pursuant to § 1983 against a person in their official capacity, it is not seen as a suit against that person, "but rather [as] a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Essentially, the official "assume[s] the identity of the government that employs them." *Hafer*, 502 U.S. at 27. For this reason, courts have held that suits against state officials in their official capacity will be treated as suits against the state itself. *Id.* Therefore, while state officials are, of course, literal people, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. The claims that Plaintiff attempts to bring against Defendants Nicholson and Banning in their official capacities are therefore suits against the state which, as discussed, are subject to Eleventh Amendment immunity. Accordingly, it will be recommended that the claims against Defendant Nicholson and Defendant Banning in her official capacity be dismissed without prejudice.

3. Plaintiff Fails to State an Eighth Amendment Claim Against Defendant Banning in her Individual Capacity

While Defendant Banning, in her official capacity, is not a "person" subject to suit under § 1983, "state employees in their individual capacities may be liable

---

matter jurisdiction] should ordinarily be vacated and remanded with instructions for the claim to be dismissed without prejudice.").

for damages under § 1983, even when the conduct in question is related to their official duties." *Durham v. Kelley*, 82 F.4th 217, 224 (3d Cir. 2023).

Plaintiff alleges that Defendant Banning acted deliberately indifferent in violation of his Eighth Amendment rights. (Doc. 50, p. 8). Construing his complaint liberally, he attempts to bring this claim under 42 U.S.C. § 1983, as he says she "act[ed] under the color of state law, in a manner that violates the Fed[er]al Constitution." (*Id.*). Plaintiff has not explicitly laid out what specific behaviors Defendant Banning took that constituted deliberate indifference, but instead, he attempts to provide a broad, conclusory overview of her purported actions:

> The complete and utter failure of Dauphin County Mental Health Probation Officer Kamela Banning to communicate and or to inquire into the facts that are necessary to make a professional judgement, the denial, delay or failure to provide access and or recommend further mental health treatment, the failure to use any suitable methods to aid a probationer or bring about improvments [sic] in his condition, un[n]ecessarily and wantonly subjected the Plaintiff to a prolonged undue infliction of mental and emotional distress, as well as pain and suffering, with no penological justification.

(Doc. 50, p. 6). In their Brief in Support of the Motion to Dismiss, Defendants argue that the majority of the claims allege that Defendant Banning acted negligently against him. (Doc. 55, p. 10). As Defendants argue, negligence claims are not actionable under § 1983. *Davidson v. O'Lone*, 752 F.2d 817, 826 (3d Cir. 1984), *aff'd sub nom. Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed.

2d 677 (1986) ("However, our own court's opinions, as well as precedent from other circuits that we find persuasive, have concluded that negligence claims are not encompassed within § 1983.").

The Eighth Amendment prohibits cruel and unusual punishments, including deliberate indifference to serious medical needs, which "constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Case law has established that deliberate indifference requires something move than negligence, but need not rise to "acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). To establish a *prima facie* case of deliberate indifference under the Eighth Amendment, a plaintiff must allege: "that (1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff." *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023). This standard is met where "knowledge of the need for medical care is accompanied by the intentional refusal to provide that care." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (internal citation and quotation omitted).

Even the most liberal reading of Plaintiff's Amended Complaint does not lead to the conclusion that Plaintiff is pleading anything more than negligence. But

21

if he were, his Eighth Amendment deliberate indifference claims against Defendant Banning fail because she was not responsible for his medical care. "Non-medical personnel generally will not be found deliberately indifferent for purposes of an Eighth Amendment inadequate-medical-care claim unless they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Montanez v. Price*, 154 F.4th 127, 143 (3d Cir. 2025) (internal quotation omitted). When Defendant Banning visited Plaintiff at CSG, where he was receiving mental health treatment, she was therefore "justified in believing that [Slaughter was] in capable hands." *Id.*

Moreover, Plaintiff's Eighth Amendment claim against Defendant Banning fails for an additional reason: to establish an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate that he is in the government's physical custody. *Estelle v. Gamble*, 429 U.S. 97, 103–04, 97 S. Ct. 285, 290–91, 50 L. Ed. 2d 251 (1976). *See also Luna v. Weiner*, No. CIV A 05-2298, 2006 WL 2570837, at *4 (D.N.J. Sept. 5, 2006) ("[I]n order to demonstrate an Eighth Amendment claim alleging deliberate indifference to a serious medical need, a plaintiff must demonstrate that he was in the physical custody of the government."); *Benedict v. Sw. Pennsylvania Hum. Servs., Inc.*, 98 F. Supp. 3d 809, 817 (W.D. Pa. 2015) (Finding that the plaintiff, who was sentenced to a drug rehabilitation program rather than prison, was not incarcerated for Eighth

22

Amendment purposes, because "[w]hile Supreme Court precedent does not appear to explicitly require 'incarceration' for the Eighth Amendment to apply, the Third Circuit's construction plainly states that it is a necessary component of the analysis."). This is a logical requirement based on the reasoning that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200, 109 S. Ct. 998, 1005, 103 L. Ed. 2d 249 (1989). The fact of a person's incarceration prevents "a prisoner [from exercising] ordinary responsibility for his own welfare." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998).

Here, Slaughter was not in government custody. While it is unclear whether CSG is an inpatient program, Plaintiff was undisputedly on probation, (Doc. 50, p. 2), and not incarcerated. (*Id.* at 3).[4] It certainly cannot be said that Plaintiff was reliant upon his probation officer for his medical needs, such that it became Defendant Banning's duty. Because he was out of custody, Plaintiff was

---

[4] Although Plaintiff's status as a probationer put him "in custody" of the state, "[t]he Eighth Amendment does not provide a right to medical care for persons who are under the custody of the state, but are not prisoners." *Santos v. Sec'y of D.H.S.*, No. CIV.A. 10-7266, 2012 WL 2997036, at *10 (E.D. Pa. July 23, 2012), *aff'd*, 532 F. App'x 29 (3d Cir. 2013).

responsible for taking care of his own medical needs—as he did when he "agreed to sign a 201 and was admitted to the Pennsylvania Psychiatric Institution." (Doc. 50, p. 3). Plaintiff has failed to state an Eighth Amendment claim against Defendant Banning, both because he has merely alleged negligence and because he was not in government custody, and the claim against Defendant Banning in her individual capacity should be dismissed with prejudice.

    4.  <u>Plaintiff Should Be Allowed Leave to Amend the Fourth Amendment False Arrest Claim</u>

As previously noted, Plaintiff's original Complaint alleged that Defendant Banning made false statements to the County Court resulting in an arrest warrant being issued and Plaintiff being placed on house arrest for six months. He also alleged that the warrant was rescinded. Judge Bloom liberally construed these allegations as stating a cognizable claim for false arrest under the Fourth Amendment and recommended that the claim be allowed to proceed. (Doc. 14, pp. 6–10). That recommendation was adopted by Order. (Doc. 21). In his Amended Complaint, Plaintiff appears to incorporate that claim by reference by stating: "Plaintiff has already established the facts in his Fourth Amendment complaint." (Doc. 50, ¶ 24). He later alleges: "As stated in Plaintiff[']s Fourth Amendment Complaint, Plaintiff was placed on house arrest, with electric [sic] monitor for 6 months." (Doc. 50, ¶ 27). He claims that during that time it was difficult for him to function and that his mental health problems were exacerbated. (*Id.*).

24

"In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (cleaned up). While the Amended Complaint does not set forth a factual basis to support a claim for false arrest, Plaintiff appears to be under the impression that because the claim was previously permitted to proceed, there was no need to restate that claim. Scant facts were provided in the original Complaint and even fewer in the Amended Complaint, and Defendants' arguments that Plaintiff provided no reasons as to why he was placed on house arrest are well taken. Further, the Complaints (read together) make no connection between the issuance of the warrant and the house arrest sanction. Nevertheless, mindful of the Third Circuit's instruction that "courts have a special obligation to be more forgiving of *pro se* litigants" and because our Circuit "has a longstanding policy of allowing *pro se* plaintiffs to amend their complaints before the court rules upon defendants' motions to dismiss," *Montanez v. Price*, 154 F.4th 127, 153 (3d Cir. 2025), Plaintiff should be allowed leave to amend the Fourth Amendment false arrest claim only.

## B. Title II of the Americans with Disabilities Act and Rehabilitation Act

The Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") are considered "twin pillars of federal disability discrimination law."

25

*Montanez v. Price*, 154 F.4th 127, 144 (3d Cir. 2025). These laws work in tandem not only to proscribe discriminatory animus, but to impose an affirmative obligation on public entities to provide reasonable accommodations for individuals with disabilities in all their programs, services, and activities. *Id.*; *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019). While these two laws impose the same prohibitions, they apply to different entities:

> Section 504 of the Rehabilitation Act provides broad prohibitions against discrimination on the basis of disability and applies only to programs and activities receiving federal financial assistance. Title II of the ADA extends these protections to all state and local government programs and activities. The substantive provisions of the statutes are similar and are to be interpreted consistently. *Yeskey v. Com. Of Pa. Dept. of Corrections*, 118 F.3d 168, 170 (3d. Cir. 1997). Thus, our discussion of [Plaintiff's] ADA claim also encompasses his Rehabilitation Act claim.

*Reaves v. Rossman*, No. 3:21-CV-1282, 2023 WL 11983784, at *5 n.3 (M.D. Pa. Nov. 22, 2023), *report and recommendation adopted,* No. 3:21-CV-1282, 2024 WL 4868648 (M.D. Pa. Feb. 20, 2024).

For this analysis, therefore, Title II of the ADA and the RA will be considered together. The standard for stating a claim is the same for both statutes: a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288–89.

Title II of the Americans with Disabilities Act addresses discrimination within public services, which includes any state or local government. 42 U.S.C. §§ 12131–65. It states: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12131. In contrast, Section 504 of the Rehabilitation Act of 1973 "reaches only recipients of [f]ederal financial assistance. 29 U.S.C. § 794(a). This covers those who receive the aid directly from the federal government or indirectly through another recipient of that aid." *Montanez*, 154 F.4th at 144 (internal citation and quotation omitted). It is undisputed that the Commonwealth of Pennsylvania is a public entity and receives federal funds, such that it is a proper defendant under both Title II of the ADA and Section 504 of the RA. *Id.* (citing *Furgess*, 933 F.3d 285, 288–93 (3d Cir. 2019) (allowing Title II and Section 504 claims against the Commonwealth to proceed)).

1. ADA and RA Claims Against Defendant Banning in Her Individual Capacity

As referenced above, Plaintiff's ADA claim in his original complaint against Defendant Banning in her individual capacity was previously dismissed with

27

prejudice.[5] Accordingly, the reiteration of Plaintiff's claim against Defendant Banning in her individual capacity is barred the doctrine of claim preclusion. Claim preclusion, also referred to as res judicata, protects defendants from the risk of "repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (quoting *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011) (internal citations omitted)).

Claim preclusion consists of three elements: (1) A final judgment on the merits in a prior suit; (2) a subsequent suit based on the same cause of action; and (3) involvement of the same parties or their privies in both suits. *Ndungu v. Att'y Gen.*, 126 F.4th 150, 165 (3d Cir. 2025). The prior judgment's preclusive effect extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit. *See In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). This is because a party may not split

---

[5] Judge Bloom's Report and Recommendation concluded "that Slaughter's ADA claim fails as a matter of law because the ADA does not provide for individual liability. As one court in this district has noted, while the Court of Appeals has not specifically addressed the question of whether Title II of the ADA applies to officers in their individual capacities, courts within this circuit have concluded that there is no individual liability under the ADA." (Doc. 14, p. 11). Since the issuance of that Report, the Third Circuit published *Montanez v. Price*, where it explicitly held that individual defendants are not subject to suit in their personal capacities under Title II of the ADA. 154 F.4th 127 (3d Cir. 2025).

a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together. *Mars, Inc. v. Nippon Conlux Kabushiki–Kaisha*, 58 F.3d 616, 619–620 (Fed. Cir. 1995) (citing Restatement (Second) of Judgments § 24(2) (1984) and *Gregory v. Chehi*, 843 F.2d 111, 117 (3d Cir. 1988)). Plaintiff seeks to bring the same claim against the same defendants based on the same basic facts; accordingly, the ADA claim is barred.

However, even setting aside claim preclusion, the Amended Complaint fails to state a viable cause of action. Plaintiff brings claims in violation of both Title II of the ADA and the RA against Defendant Banning. (Doc. 50, p. 6 at ¶ 2) ("The acts and omission of Mental Health Probation Officer Kamela Banning are extremely discriminatory, grossly negligent and a direct violation of . . . the policies and provisions set forth by the ADA, RA."). Plaintiff now brings suit against Defendant Banning in both her individual and official capacity. (*Id.* at p. 2). The claims against her in her individual capacity are subject to dismissal. As discussed, both Title II of the ADA and the RA address discrimination by public entities. "[I]ndividuals acting in their individual capacities are not public entities within the meaning of the ADA. Thus, the Commonwealth Defendants, in their individual capacities, cannot be liable under Title II of the ADA, and their Motion

29

to Dismiss is granted as to this issue." *Wesley v. Vaughn*, No. CIV.A. 99-1228, 2003 WL 1493375, at *6 (E.D. Pa. Mar. 19, 2003) (internal citation omitted). State employees are not public entities so they cannot be sued under Title II, and individual defendants do not receive federal aid so they cannot be sued under Section 504. *Montanez v. Price*, 154 F.4th 127, 145 (3d Cir. 2025) (quoting *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002)). Therefore, the Title II ADA and RA claims could only proceed against Defendant Banning in her official capacity,[6] and it will be recommended that the claims against her in her individual capacity be dismissed with prejudice because amendment of this claim would be futile.

---

[6] "The Third Circuit Court of Appeals has held that a state official may be sued in his or her official capacity when prospective injunctive relief is sought for ongoing violations of the ADA. This is because at its core, the claim is against 'entities for which an officer is an agent.' *Koslow v. Pennsylvania*, 302 F.3d 161, 178–79 (3d Cir. 2002) ('[F]ederal ADA claims for prospective relief against a state official in their official capacity is authorized by the *Ex Parte Young* doctrine.'). Additionally, the United States Supreme Court has held that Title II of the ADA abrogates state sovereign immunity and allows an inmate to bring a claim for money damages against the State 'for conduct that *actually* violates the Fourteenth Amendment.' *United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original)." *Brown v. Monsalud*, No. 1:20-CV-0849, 2021 WL 4502238, at *4 (M.D. Pa. Sept. 30, 2021).

2. <u>ADA and RA Claims Against Defendants Banning in Her Official Capacity and Dauphin County Adult Probation</u>[7]

Throughout the Amended Complaint, Plaintiff alleges that his probation officer and the Probation Office were grossly negligent and indifferent to his mental health conditions and needs. He maintains that this gross negligence and inaction constitute violations of the ADA and the RA. However, as argued by Defendants, Plaintiff has not alleged that he was denied participation in a service, program, or activity of a public entity. Similarly, although he makes a broad and conclusory allegation that he was discriminated against, he makes no factual allegations to support that claim.

To state a plausible claim under Title II of the ADA, a plaintiff must plead that "(1) [they are] a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of [their] disability." *Ashford v. Heisey*, No. 1:25-CV-00660, 2025 WL 1669090, at *5 (M.D. Pa. June 12, 2025) (quoting *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)). Furthermore, if a plaintiff seeks compensatory damages, they are also required to "show intentional discrimination under a

---

[7] Plaintiff did not assert an ADA claim against Banning in her official capacity in his original Complaint. Because this action does not involve the "same parties or their privies in both," *Ndungu v. Att'y Gen.*, 126 F.4th 150, 165 (3d Cir. 2025), the official capacity action is not barred by claim preclusion.

deliberate indifference standard." *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023) (citing *Furgess v. Penn. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019)). Intentionality may be shown by alleging that (1) knowledge that a federally protected right is substantially likely to be violated and (2) failure to act despite that knowledge." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (internal probation revocation." *Bolden v. Winchester*, No. CIV.A.07-756-SLR, 2008 WL 482471, at *2 (D. Del. Feb. 19, 2008).

The first and second elements require a plaintiff to be a qualified individual with a disability. The ADA defines a disability as "a physical *or mental* impairment that substantially limits one or more major life activities of such individual." 42 U.S. Code § 12102 (emphasis added). Plaintiff has adequately alleged that he suffers from a mental impairment, which Defendants do not dispute. The third element requires that the plaintiff have been excluded from participation in a service, program, or activity of a public entity, or, that he was subjected to discrimination by a public entity. *Ashford,* 2025 WL 1669090, at *5. The statute defines a "public entity," in relevant part, as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). Dauphin County Adult Probation qualifies as a public entity, and courts within this district "have held or implied that the ADA extends its anti-discrimination guarantees to the

parole/probation context." *Horsch v. Cantymagli*, No. 24-CV-1183, 2024 WL 1444020, at *6 (E.D. Pa. Apr. 3, 2024); *see, e.g.*, *Ashford v. Heisey*, No. 1:25-CV-00660, 2025 WL 1669090, at *4 (M.D. Pa. June 12, 2025) (finding that plaintiff had presumably raised a Title II ADA claim by bringing suit against a county probation department and a probation officer).

Defendants' argument that Plaintiff fails to allege that he was either excluded from participation in or denied benefits or services has merit. Plaintiff does not identify any program or service offered by Defendants that he was excluded from by reason of his mental impairments. While Plaintiff argues that the Defendants should have done more to help him and should have offered more services, he does not allege he was denied participation in any service or program. The inquiry, however, does not end there. A plaintiff can also state a claim by alleging he was subjected to discrimination by a public entity. "A plaintiff who shows he was 'otherwise discriminated against' but not 'excluded' by a public entity makes out a prima facie case of discrimination under Title II. Thus, [plaintiff] makes out a prima facie case if he was "otherwise discriminated against" by [defendant], whether he was 'excluded' or not." *Waters v. Amtrak*, 456 F. Supp. 3d 666, 671–72 (E.D. Pa. 2020).

In his Amended Complaint, Plaintiff refers to a previous filing where he states that he was placed on house arrest with an electronic monitor for six months.

(Doc. 50, p. 5 at ¶ 27). In the initial complaint filed on July 16, 2024, Plaintiff asserts he left voicemails for Defendant Banning, informing her that he was in a treatment center. (Doc. 1, p. 9). However, Defendant Banning said that she was unaware of Plaintiff's whereabouts "for an extended period of time," and an arrest warrant was subsequently issued. (*Id.*). Here is where the allegations get murky. It appears that Plaintiff is alleging that as a result of this, he was placed on house arrest with an electronic monitor, presumably in violation of his probation. (*See* Doc. 1, p. 10; Doc. 50; p. 5).

Discrimination encompasses an adverse action motivated by prejudice and fear of disabilities. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). Plaintiff asserts that "[d]espite the Plaintiffs [sic] attempts to keep Officer Banning informed, Officer Banning chose to Violate the Plaintiff for failure to report to the office, even when the Plaintiff was in treatment and or being hospitalized for mental health issues." (Doc. 50, p. 7). He alleges that the "acts or omission of Officer Banning constitute[]…a violation of Title 2 of the ADA which prohibits a Public Entity for discrimination against a qualified individual with a disability." (Doc. 50, p. 7). Although not expressly alleged, the adverse action Plaintiff appears to allege to have suffered is therefore not a denial of access to services, but discrimination by the probation officer for falsely reporting to the

Court that he violated the terms of his probation.[8] Even if Banning can somehow be said to have discriminated against the Plaintiff, it is not averred that her actions (or inactions) were taken because of his disabilities.

Furthermore, the fourth and final element to stating a claim under Title II of the ADA and Section 504 of the Rehabilitation Act is causation, requiring a plaintiff to allege facts sufficient to show that he was discriminated "by reason of" his disability. *Talley v. PA Dep't of Corr.*, No. CV 19-1687, 2019 WL 6050744, at *5 (E.D. Pa. Nov. 14, 2019) (citing *Brown v. Pennsylvania Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008)). Causation standards differ between the ADA and the RA: while the ADA requires only but-for causation, the RA requires the disability to be the sole cause of the discriminatory act. *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 291 n. 25 (3d Cir. 2019) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 236 n.11 (3d Cir. 2013)).

Plaintiff has not sufficiently pled causation under either Title II of the ADA or Section 504. He does not allege that his probation was violated because of his disability, but because he failed to report to probation. His allegations against Banning underly his Fourth Amendment false arrest claim but do not support a cause of action under the ADA or RA. While Plaintiff alleges that Banning acted

---

[8] The alleged false report to Judge Tully is the subject of Plaintiff's Fourth Amendment false arrest claim.

negligently, recklessly, or even intentionally, there are no allegations that she made the violation report because of his mental health issues. Similarly, there is no allegation that Banning had the authority to order home confinement. It simply cannot be inferred from the allegations in the Amended Complaint that Defendant Banning would have overlooked his failure to report had he not suffered from mental illness. The fact that Plaintiff did not report because he was in a treatment center related to his disability does not establish causation: if this were sufficient to establish causation, it would lead to the conclusion that Defendant Banning "should have reprimanded his disability-caused conduct differently, namely, by allowing him to retain his parole." *Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1243 (D. Colo. 2009). The Western District of Pennsylvania has held that when a plaintiff conducts himself in a way that leads to disciplinary action, the fact that the underlying conduct stems from mental health issues does not raise a claim under Title II of the ADA or Section 504 of the RA:

> There is no indication that the Decedent was disciplined differently from other prisoners because of his disability, only that the Plaintiff believes the Decedent's discipline should have been meted out with a consideration of his disability. . . . The fact that a prisoner possesses a qualifying disability of mental illness under the ADA and RA does not mean that any discipline imposed upon him must be a measured imposition of discipline in light of his disability.

*Scherer v. Pennsylvania Dep't of Corr.*, No. CIV.A. 3:2004-191, 2007 WL 4111412, at *9 (W.D. Pa. Nov. 16, 2007). Plaintiff has therefore failed to allege

36

that he was violated "by reason of" his disability—he claims that Defendant

Banning ignored his disability when she violated his probation, but not that she

violated him "because of discriminatory animus based on his alleged mental

disabilities." *Brown v. Pennsylvania Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir.

2008). Plaintiff has not stated, nor does a liberal reading of the complaint indicate,

that Slaughter "was subject to different disciplinary standards than other non-

disabled parole violators." *Hughes*, 594 F. Supp. 2d at 1243. Accordingly, the

Amended Complaint, fails to state a claim for violations of the Title II of the ADA

or RA.

## C. Title III of the Americans with Disabilities Act

The final federal claim is a Title III ADA claim: Plaintiff alleges that "[t]he

failure of Dauphin County Adult Probation to recognize acknowledge, and make

reasonable modifications in policies, practices or procedures, and or

accommodations for an individual with a well known mental disability, is a direct

violation of title 3 of the ADA." (Doc. 50, p. 6). He also claims that Defendant

Banning's acts constituted a direct violation of Title III of the ADA, for "failure to

apply eligibility criteria to screen out an individual with a disability from fully and

equally enjoying services or accommodations," or to provide reasonable

accommodations in policy, practices, or procedures. (*Id.* at 6–7).

Title III of the ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Broadly speaking, it prohibits discriminating against disabled individuals from the use of public accommodations or public transportation services. *Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 397 (M.D. Pa. 2020).

To state a prima facie claim under Title III of the ADA, the plaintiff must show that 1) he is disabled; 2) the defendant is a "public accommodation" under Title III; and 3) that the defendant unlawfully discriminated against him by failing to made a necessary and reasonable accommodation. *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d Cir. 2019). Here, Plaintiff cannot establish that Dauphin County Adult Probation or Defendant Banning, in her official or individual capacity, are "public accommodations." Courts in this district do not consider Title III claims against entities that are not public accommodations. *See Johnson v. Tritt*, No. 1:18-CV-203, 2020 WL 1911538, at *11 n.9 (M.D. Pa. Apr. 20, 2020) ("Public accommodations include service establishments such as hospitals, gas stations, laundromats, etc., 'if the operations of such entitles affect commerce.' *Id.* § 12181(7)(F). Nothing in the record before the Court suggests that SCI Frackville

38

and SCI Mahanoy and, by extension, the DOC, could be considered service establishments. . . The Court, therefore, will only consider Plaintiff's claims pursuant to Title II of the ADA"); *Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 398 (M.D. Pa. 2020) ("We dismiss Mr. Snider's claims under Title III because he fails to allege facts bringing the Department of Corrections within the definition of 'public accommodation.' We will consider Mr. Snider's Disabilities Act discrimination claims under Title II only.").

Certain private entities which affect commerce are considered to be public accommodations. 42 U.S.C. § 12181(7). But a private entity is defined as "any entity *other than* a public entity," (emphasis added), thereby explicitly excluding public entities from the definition of public accommodation. 42 U.S.C. § 12181(6). As discussed *supra*, county probation departments are considered public entities. Plaintiff's claims therefore can only be considered under Title II, and will be recommended that the Motion to Dismiss be granted as to that claim, and Title III ADA claims be dismissed with prejudice.

### D. <u>State Law Claims</u>

Plaintiff also alleges various state law claims, including "[a] direct violation of Title 50 of the Pennsylvania Statutes, The Pennsylvania Negligence Law, [and] [t]he Protection and Advocacy for Mentally Ill Individuals Act." (Doc. 50, p. 7).

Where a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). "That decision should be based on the values of judicial economy, convenience, fairness, and comity. In the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *KL by & through Locker v. Dunmore Sch. Dist.*, No. 3:24-CV-01461, 2025 WL 2723547, at *13 (M.D. Pa. Sept. 24, 2025) (cleaned up); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Brown v. Patel*, No. 3:18-CV-01242, 2019 WL 2502337, at *6 (M.D. Pa. Mar. 13, 2019), *report and recommendation adopted*, No. 3:18-CV-1242, 2019 WL 3562656 (M.D. Pa. Aug. 5, 2019) (recommending that federal claims be dismissed pursuant to Rule 12(b)(6) and that remaining state law claims be dismissed without prejudice). Therefore, it will be recommended that any state law claims Plaintiff attempts to assert be dismissed without prejudice.

## VI.    Recommendation

For the reasons set forth herein it is respectfully recommended that:

1) The Defendants' Motion to Dismiss be **GRANTED**;

2) The section 1983 Eighth Amendment claims against Dauphin County Adult Probation; Kamela Banning, in her official capacity; and Juli Nicholson in her official capacity be **dismissed without prejudice** for want of jurisdiction based Eleventh Amendment Immunity;

3) The state law claims be **dismissed without prejudice**;

4) The Fourth Amendment false arrest claim be **dismissed without prejudice** and Plaintiff be granted leave to file a second amended complaint as to the Fourth Amendment false arrest claim only;

5) The remaining claims be **dismissed with prejudice**.

Dated: February 6, 2026                 **/s/ Leo A. Latella**
                                         Leo A. Latella
                                         United States Magistrate Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL L. SLAUGHTER
    Plaintiff,

        v.

DAUPHIN COUNTY ADULT
PROBATION, et al.,

    Defendants.

CIVIL ACTION NO. 1:24-cv-01170

(Judge Wilson)
(Magistrate Judge Latella)

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the

foregoing **Report and Recommendation** dated February 6, 2026.

Any party may obtain a review of the Report and Recommendation pursuant

to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in 28
> U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a
> prisoner case or a habeas corpus petition within fourteen (14) days after
> being served with a copy thereof. Such party shall file with the clerk of
> court, and serve on the magistrate judge and all parties, written objections
> which shall specifically identify the portions of the proposed findings,
> recommendations or report to which objection is made and the basis for such
> objections. The briefing requirements set forth in Local Rule 72.2 shall
> apply. A judge shall make a *de novo* determination of those portions of the
> report or specified proposed findings or recommendations to which
> objection is made and may accept, reject, or modify, in whole or in part, the
> findings or recommendations made by the magistrate judge. The judge,

42

however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: February 6, 2026                              **/s/ Leo A. Latella**
                                                     LEO A. LATELLA
                                                     United States Magistrate Judge